**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Demetrius McNEAR, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 2, 2004.

Filed June 14, 2004.

402

David W. Skutnik, Effort, for appellant.

Elmer D. Christine Jr., Asst. Dist. Atty., Stroudsburg, for Com., appellee.

BEFORE: TODD, GANTMAN, and TAMILIA, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Demetrius McNear, has filed this appeal from his judgment of sentence and asks us to determine whether the trial court erred when it denied him relief on his motion to dismiss pursuant to Pa.R.Crim.P. 600. Appellant also raises a challenge to the discretionary aspects of his sentence. For the following reasons, we hold the trial court properly excluded Appellant's pre-arrest time from his Rule 600 run date. We further hold Appellant's sentencing issue is waived for purposes of appellate review. Accordingly, we affirm.

¶ 2 Upon review of the certified record, we observe the relevant facts and procedural history of this case are as follows. On July 25, 2000, Appellant sold cocaine to an undercover officer in Stroudsburg, Pennsylvania. On November 2, 2000, Sergeant John Baujan of the Stroud Area Regional Police Department filed a criminal complaint against Appellant for possession with intent to deliver[1] and simple possession.[2] On November 6, 2000, an arrest warrant was issued. As numerous searches for Appellant's whereabouts proved fruitless, Detective Daniel Munch filed a wanted person form on December 8, 2000. Thereafter, on December 20, 2000, the National Crime Information Center

---

**1.** 35 P.S. § 780–113(a)(30).

**2.** 35 P.S. § 780–113(a)(16).

("NCIC") stated, via teletype, that Appellant was incarcerated in New Jersey. Detective Munch contacted the New Jersey authorities and explained that Appellant was wanted on charges in Pennsylvania and the authorities wished to extradite him. The detective was informed that after Appellant's current sentence was completed, Appellant was to be transferred to another correctional facility in Essex County, New Jersey. Consequently, Appellant would not be available to the Pennsylvania authorities until after the completion of his second New Jersey sentence. In June 2002, Essex County officials informed the Stroud Area authorities that Appellant was available for extradition. Appellant was picked up, and on August 5, 2002, entered a plea of not guilty.

¶ 3 On September 13, 2002, Appellant filed a Motion to Dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600. After a hearing, the motion was denied on October 15, 2002. On May 7, 2003, a jury convicted Appellant on all charges. On June 27, 2003, the court sentenced Appellant to an aggregate of 2 to 6 years' incarceration. On July 8, 2003, Appellant's post-sentence motion was denied and this timely appeal followed.

¶ 4 Appellant raises the following issues for our review:

> WHETHER THE [TRIAL] COURT ERRED IN DISMISSING APPELLANT'S MOTION TO DISMISS FOR VIOLATING HIS RIGHT TO A SPEEDY TRIAL UNDER THE UNITED STATES AND PENNSYLVANIA CONSTITUTIONS?
>
> WHETHER THE SENTENCE IMPOSED BY THE [TRIAL] COURT WAS EXCESSIVE?

(Appellant's Brief at 4).

■ ¶ 5 "Our standard of review in evaluating Rule 600 issues is whether the trial court abused its discretion...." *Commonwealth v. Bowes*, 839 A.2d 422, 424 (Pa.Super.2003) (citing *Commonwealth v. Peer*, 454 Pa.Super. 109, 684 A.2d 1077, 1081 (1996)). "The proper scope of review in determining the propriety of the trial court's ruling is limited to the evidence on the record of the Rule [600] evidentiary hearing and the findings of the lower court. In reviewing the determination of the hearing court, an appellate court must view the facts in the light most favorable to the prevailing party." *Commonwealth v. Wallace*, 804 A.2d 675, 677 (Pa.Super.2002) (internal citations omitted). A criminal defendant who is incarcerated in another jurisdiction is unavailable within the meaning of Rule 600 if the Commonwealth demonstrates by a preponderance of the evidence that it exercised due diligence in attempting to procure the defendant's return for trial. *Commonwealth v. Hill*, 558 Pa. 238, 736 A.2d 578 (1999). "Due-diligence is a fact-specific concept that is determined on a case-by-case basis." *Wallace, supra* at 680. "Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Hill, supra* at 256, 736 A.2d at 588.

■ ¶ 6 Appellant asserts he was not brought to trial within one year of the filing of the complaint in violation of Rule 600. Specifically, Appellant argues the Commonwealth took no steps to obtain Appellant's custody until he had completed serving his sentences in New Jersey. Appellant maintains the Commonwealth had tools available to return him to Pennsylvania in a timely manner. These tools consisted of the Interstate Agreement on Detainers ("IAD") at 42 Pa.C.S.A. §§ 9101–

9108[3] and/or the Uniform Criminal Extradition Act ("UCEA") at 42 Pa.C.S.A. §§ 9121–9148.[4] Appellant insists the Commonwealth did not exercise due diligence, because it failed to utilize either of these tools to bring him back to this jurisdiction for a timely trial. As a result, Appellant concludes his speedy trial rights were violated and he is entitled to dismissal of the charges and immediate release. We disagree.

¶ 7 In pertinent part, Rule 600 states:

**Rule 600. Prompt Trial**

(A)(3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

**(B)** For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere.*

**(C)** In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

\* \* \*

(3) such period of delay at any stage of the proceedings as results from:

(a) the unavailability of the defendant or the defendant's attorney;

(b) any continuance granted at the request of the defendant or the defendant's attorney.

\* \* \*

Pa.R.Crim.P. 600. Further, the Comment to this rule provides:

Under paragraph (C)(3)(a), in addition to any other circumstances precluding the availability of the defendant or the defendant's attorney, the defendant should be deemed unavailable for the period of time during which the defendant contested extradition, **or a responding jurisdiction delayed or refused to grant extradition**; or during which the defendant was physically incapacitated or mentally incompetent to proceed; or during which the defendant was absent under compulsory process requiring his or her appearance else-

---

**3.** "The IAD is an agreement between forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States, that establishes procedures for the transfer of prisoners incarcerated in one jurisdiction to the temporary custody of another jurisdiction which has lodged a detainer against a prisoner. Unlike a request for extradition, which is a request that the state in which the prisoner is incarcerated transfer custody to the requesting state, a detainer is merely a means of informing the custodial jurisdiction that there are outstanding charges pending in another jurisdiction and a request to hold the prisoner for the requesting state or notify the requesting state of the prisoner's imminent release." *Commonwealth v.*

*Davis,* 567 Pa. 135, 138–39, 786 A.2d 173, 175 (2001) (quoting *Commonwealth v. Montione,* 554 Pa. 121, 124, 720 A.2d 738, 740 (1998), *cert. denied,* 526 U.S. 1098, 119 S.Ct. 1575, 143 L.Ed.2d 671 (1999)).

**4.** "[T]he [UCEA], codified in Pennsylvania at 42 Pa.C.S.A. § 9121 ·*et seq.* has been adopted by 48 States, Puerto Rico, and the Virgin Islands. The [UCEA], like the IAD, establishes procedures for the interstate transfer of persons against whom criminal charges are outstanding. Unlike the IAD, the [UCEA] applies to persons at liberty as well as to persons in prison." *Davis, supra* at 139 n. 2, 786 A.2d at 175 n. 2.

where in connection with other judicial proceedings.

Pa.R.Crim.P. 600, Comment (emphasis added).

The mechanical run date is the date by which the trial must commence under Rule 600. It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed. The mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

*Commonwealth v. Lynn*, 815 A.2d 1053, 1056 (Pa.Super.2003). "It is generally held that Rule [600] is tolled where the Commonwealth shows, by a preponderance of the evidence, that it has acted with due diligence in seeking extradition to bring the defendant to trial.... The matters of availability and due diligence must be judged by what **was** done by the authorities rather than by what was not done." *Commonwealth v. DeMarco*, 332 Pa.Super. 315, 481 A.2d 632, 636 (1984) (internal citations omitted) (emphasis in original). Under Rule 600(c)(1), time between the filing of the complaint and a defendant's arrest may be excluded from calculation of the trial commencement period, provided the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence. *Commonwealth v. Ingram*, 404 Pa.Super. 560, 591 A.2d 734, 737 (1991), *appeal denied*, 530 Pa. 631, 606 A.2d 901 (1992). In addition, the Comment to Rule 600 states a defendant is deemed unavailable during the time a responding jurisdic-

tion delays or refuses to grant extradition. *See* Rule 600 Comment, *supra*.

¶ 8 In the instant case, the criminal complaint against Appellant was filed on November 2, 2000, and an arrest warrant was issued on November 6, 2000. Detective Munch testified that prior to and after the complaint was filed, he tried to locate Appellant by systematically investigating all of Appellant's possible addresses. However, none of the addresses led to Appellant's whereabouts. In addition, Detective Munch stated all of Appellant's known associates were incarcerated, and he was unaware of any family Appellant might have had in the area.[5]

¶ 9 Next, Detective Munch entered the warrant for Appellant's arrest into the NCIC. On December 20, 2000, an NCIC teletype informed the Stroud Area authorities that Appellant was incarcerated in New Jersey. Specifically the teletype stated:

BE ADVISED SUBJ IN CUSTODY OF THIS AGENCY, ALSO WNTD BY NJ DOC, TEL 609–984–2570 FOR ESCAPE; SUBJ BEING HELD FOR THEM NO BAIL. IF SUBJ STILL WANTED BY YOUR AGENCY CONTACT NJ DOC AND/OR OUR WEST-DISTRICT [SIC] PCT. CC 00118136

(NCIC Teletype, dated December 20, 2000). Thereafter, Detective Munch spoke with the contact listed on the teletype and explained that Appellant was wanted on charges in Pennsylvania. Detective Munch expressed the desire to extradite Appellant. The detective was told Appellant would not be available for extradition until after he had completed his current sentence and another sentence to be served in Essex County, New Jersey. In May 2001, Appellant was transferred to

---

**5.** Testimony at trial determined Appellant and his family were from Newark, New Jersey.

(N.T., 5/7/03, at 52–63).

Essex County, New Jersey. The New Jersey authorities reiterated to Detective Munch that Appellant would not be available to Pennsylvania authorities until after he completed his Essex County sentence. In late June 2002, the Essex County authorities contacted Detective Munch and informed him that Appellant was available for extradition. (*See* Trial Court Findings of Fact, entered October 15, 2002, at 1–2). Detective Munch immediately returned Appellant to Pennsylvania. The record demonstrates Appellant was arraigned on June 26, 2002. On September 13, 2002, Appellant filed his Rule 600 motion to dismiss.

¶ 10 For purposes of Rule 600, the mechanical run date for Appellant's trial was November 2, 2001, one year from the date the criminal complaint was originally filed. When Appellant filed his Rule 600 motion to dismiss on September 13, 2002, 670 days had already elapsed. However, from November 2, 2000 until June 26, 2002, Appellant's whereabouts were at first unknown, then subsequently established in New Jersey, which denied extradition. After review of the efforts of Detective Munch, the court found the time Appellant's whereabouts were unknown and the time he spent under the auspices of the New Jersey authorities was excludable. *See* Rule 600, Comment *supra.* We see no abuse of discretion in the court's decision to exclude the pre-arrest time from the Rule 600 run date. *See Hill, supra; DeMarco, supra.*

¶ 11 Moreover, in view of the fact that the New Jersey authorities opposed extradition, the Commonwealth was not necessarily compelled to proceed under either the IAD or the UCEA, where to do so would no doubt have been fruitless. Therefore, the due diligence provisions under those Acts are not implicated in the present case, even tangentially.

¶ 12 Finally, Appellant acknowledges the Commonwealth ultimately used the UCEA to secure his custody, albeit beyond the one-year mechanical run date for Rule 600 purposes. After a brief mention of the UCEA, however, Appellant abandons it without any development or citation to relevant authority, choosing instead to focus on the IAD. *See Commonwealth v. Franklin,* 823 A.2d 906, 910 (Pa.Super.2003) (citing Pa.R.A.P. 2119(a) (stating rules of appellate procedure require Appellant's arguments to have discussion and citation to relevant authorities)). Appellant's failure to comply with this mandate constitutes waiver of the issue. *See id.* Therefore, Appellant's UCEA claim is waived. *Id.*

¶ 13 In his last issue, Appellant claims his sentence was excessive. Nevertheless, Appellant concedes his sentence was not illegal and was not in violation of the sentencing code. This challenge implicates the discretionary aspects of his sentence. Upon review, we conclude this issue has been waived.

¶ 14 A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Hunter,* 768 A.2d 1136 (Pa.Super.2001) *appeal denied,* 568 Pa. 695, 796 A.2d 979 (2001). When challenging the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617 (2002); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987); 42 Pa.C.S.A. § 9781(b); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in

the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional cases.'"** *Commonwealth v. Williams,* 386 Pa.Super. 322, 562 A.2d 1385, 1387 (1989) (*en banc*) (emphasis in original). If an appellant fails to comply with Pa.R.A.P. 2119(f) and the Commonwealth objects, the issue is waived for purposes of review. *Commonwealth v. Farmer,* 758 A.2d 173, 182 (Pa.Super.2000), *appeal denied,* 565 Pa. 637, 771 A.2d 1279 (2001).

¶ 15 Here, Appellant has not included a separate Rule 2119(f) statement in his appellate brief, and the Commonwealth objected. Therefore, the issue is waived for purposes of appellate review.[6] *See id.* In addition, Appellant does not explain why he thinks his sentence is excessive, nor does he cite to any supporting authority. Appellant's failure to brief this issue in the appropriate manner precludes appellate review as well. *See Franklin, supra.*

¶ 16 For the foregoing reasons, we hold the trial court properly excluded Appellant's pre-arrest time from his Rule 600 run date. We further hold Appellant's sentencing issue is waived for purposes of appellate review. Accordingly, we affirm Appellant's judgment of sentence.

¶ 17 Judgment of sentence affirmed.

---

**6.** Appellant includes in his brief a "Statement of the Scope and Standard of Review Pursuant to Pa.R.A.P. 3518." Rule 3518 was rescinded on January 14, 1999. Moreover, his "statement" falls short of the requirements of a Pa.R.A.P. 2119(f) Statement in that Appellant's statement makes only bald assertions that his sentence was excessive. *Williams, supra* at 1389 (holding Rule 2119(f) statement must contain factual averments which suggest that sentencing code was compromised; merely stating that sentencing court abused its discretion in imposing excessive sentence is inadequate).